# In the United States Court of Federal Claims

No. 18-481C
(Filed Under Seal: May 29, 2018)
Reissued: May 31, 2018[1]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DYNETICS, INC.,**

                Plaintiff,

         v.

**THE UNITED STATES,**

                Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Jon D. Levin*, Maynard, Cooper & Gale, PC, Huntsville, AL, for Plaintiff.

*Isaac B. Rosenberg*, Trial Attorney, *Chad A. Readler*, Acting Assistant Attorney General, *Robert E Kirschman, Jr.*, Director, *L. Misha Preheim*, Assistant Director, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., for Defendant; Of Counsel, *Charles G. McCarthy*, Assistant Regional Counsel, U.S. General Services Administration, Office of Regional Counsel, San Francisco, CA.

## OPINION AND ORDER

**DAMICH, Senior Judge**

On April 2, 2018, Plaintiff Dynetics, Inc. ("Dynetics") filed this post-award bid protest challenging the decision of the General Services Administration ("GSA" or "Agency") to rescind Dynetics' award based on the Agency's re-evaluation, which led to it deducting 500 points from Dynetics's self-score in an award of contracts in connection with the Alliant 2 government-wide acquisition contract ("GWAC") under Request for Proposals No. QTA0016JCA003 ("The RFP" or "Solicitation").[2] The GWAC is a

---

[1] The parties were directed to submit any redactions; they agreed that no redactions were necessary.

[2] Five other related bid protests were also filed in this court and assigned to the undersigned. *See Centech Group, Inc. v. United States,* Case No. 17-2031C; *OBXtek, Inc., v. United States*, Case No. 17-1849C; *Octo Consulting Group, Inc., v. United States*, Case No. 17-2056C; *Capgemini Gov't. Solutions LLC v. United States*, Case No. 18-3C; and *Harris IT Services Corp. v. United States*, Case No. 18-24C. Two of them have since been voluntarily withdrawn. *See Harris IT Services Corp. v. United States*, Case No. 18-

Multiple Award, Indefinite Delivery, Indefinite Quantity ("IDIQ") contract to provide information technology ("IT") services to a wide variety of federal agencies. In its protest, Dynetics alleges that GSA acted arbitrarily and capriciously, and failed to obey applicable laws and regulations. Dynetics, therefore, requests the Court to enter judgment on the administrative record in its favor and restore its award.

The Court adopted the litigation schedule as provided by the parties and entered its scheduling order on April 3, 2018. Pursuant to the scheduling order, the administrative record was timely filed on April 11, 2018.

On April 18, 2018, Dynetics filed its motion for judgment on the administrative record ("Pl. Mot."). Defendant timely filed a motion to dismiss, cross-motion for judgment on the administrative record and response ("Def. Mot.") on April 25, 2018, arguing that (1) Dynetics' protest is untimely, (2) Dynetics lacks standing, or in the alternative, (3) GSA's re-evaluation and deduction of points was reasonable.

The parties timely filed their respective responses and replies with briefing completed on May 4, 2018.

For the reasons that follow, the Court **DENIES** Dynetics' motion for judgment on the administrative record and **GRANTS** defendant's cross-motion for judgment on the administrative record. Defendant's motion to dismiss is **DENIED**.

**I.     Facts**

**A. The Solicitation**

GSA first published notice of its intent to procure under the RFP in FedBizOps in January 2014. AR at 1. GSA made its first draft RFP public in March 2015, AR at 412, and received more than 900 comments regarding draft RFPs by December 2015. AR at 1891.

On June 24, 2016, GSA issued the RFP. AR at 1887. The RFP provided for a 5-year base period, one 5-year option period, and a total ceiling value of $50 billion for all task orders. AR at 1386, 1334. The RFP further provided that GSA would issue multiple awards to the top sixty highest-rated offerors on a best-value bases to "the highest technically rated offerors with a fair and reasonable price." AR at 1581-82. Offerors were to self-score their proposals in the following categories: relevant experience; past performance; systems, certifications, and clearance; and organizational risk assessment. AR at 1517-80. GSA would then verify the scoring during proposal evaluation. AR at 1582. Based on the offeror's answers, the scoring worksheet auto-calculated its score out of a possible 83,100 points. AR at 30306. In the event of a tied score, "all Offerors

---

24C at ECF No. 17; *Capgemini Gov't. Solutions LLC v. United States*, Case No. 18-3C at ECF No. 47.

precisely tied at the 60th position will receive an award." AR at 1582. The awardees would then be permitted to bid on a series of fixed-price, cost reimbursement, time-and-materials, and labor-hour task orders to provide IT services to various federal agencies. AR at 1333.

Relevant to this protest is the evaluation under Project Service Code ("PSC") Group Projects. Under this section, offerors could possibly earn a total of 17,000 points for experience under traditional information technology projects, known as PSC Group Projects, RFP Section 5.2.2. AR at 2264. In order to score these points, offerors were required to submit verification documents under two methods, depending on the information available. AR at 1543-44.

RFP section L.5.2.2.1.1 provided the two methods of verifying relevant experience: (1) a Federal Procurement Data System – Next Generation Report ("FPDS Report"), combined with the statement of work, as verification, or (2) if an FPDS Report was either not available, incomplete, or inaccurate, an offeror could submit the J.P-2 form describing the project and signed by the project's contracting officer, corporate officer, or local official, a copy of the contract award document and any modifications, a copy of the contract statement of work, and, if applicable, documentation of the contract line items. AR at 1543-44. Simply put, an FPDS Report was required if possible; if it was not possible, then the J.P-2 form option with the contracting officer's signature was an available option in order to gain the base points for PSC experience.

In addition to the possible 17,000 PSC project points, an offeror could earn an additional 500 points, per project, if an offeror could establish that the contract was of a particular size or complexity. AR 1673-74. This required that an offeror establish that the contract was either a multiple-agency award or a cost-reimbursement-type contract for each separate federal customer. AR at 1548-49. To verify the distinct sources of federal funding, RFP Sections L.5.2.2.2, L.5.2.2.3 and L.5.2.2.4 explicitly required the submission of an FPDS Report to award these points, *unlike the base points for the underlying PSC experience*. AR at 1547-48 (emphasis added). In other words, to capture base points an offeror had the option of the two methods of verifying relevant experience; but in order for an offeror to gain additional points the FPDS Report was required.

Specific to this protest is RFP Section L.5.2.2.3, "PSC Group Relevant Experience – Demonstrating Experience with Multiple Federal Government Customers," which provided in pertinent part:

> This additional scoring is only available for relevant experience projects performed as a prime contractor to the Federal Government.
>
> Federal Government Customer is determined by the Funding Agency ID identified within the FPDS Report . . .
>
> Verification must also be provided by attaching the FPDS Report that indicates the claimed Funding Agency ID.

AR at 1548.

### B. Proposal Submission, Evaluation, Award, Re-evaluation, and Rescission

Dynetics timely filed its proposal in response to the RFP, along with 169 other offerors. AR at 30306. The Source Selection Evaluation Team ("SSET") performed a technical evaluation of the 170 offers, selecting the top 61 rated proposed for price evaluation. AR at 30306. Dynetics was included in the award at the tied position of 61. AR at 30662. The awardee technical scores ranged 83,100 to 73,600 at slots 59, 60, and 61, and any technical score below 73,600 was ineligible for award. AR at 30306.

In February of 2016, the SSET re-evaluated Dynetics' bid. AR at Tab 983. In a February 22, 2018 memo, the SSET informed the Agency that it had deducted 500 points from Dynetics' bid because Dynetics had not submitted an FPDS Report for one of its claimed PSC projects. On March 16, 2018, the Agency sent Dynetics a letter notifying it of the re-evaluation and Contract cancellation. AR at 31211-31212.

### II.   Legal Standards

The Court has jurisdiction under the Tucker Act, 28 U.S.C. section 1491(b)(1). The Tucker Act, as amended by the Administrative Disputes Resolution Act of 1996, 28 U.S.C. section 1491(b)(1), grants this Court exclusive jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal Agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b)(1). Under the Tucker Act, an "interested party" includes an actual or prospective offeror whose direct economic interest would be affected by or which has suffered a non-trivial competitive injury or prejudice as a result of the alleged error. *Sys. Application & Tech., Inc. v. United States*, 691 F.3d 1374, 1382 (Fed. Cir. 2012).

The Court sustains procurements so long as the action was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), overruled on other grounds, *Califano v. Sanders*, 430 U.S. 99 (1977); *Ramcor Servs. Group, Inc. v. United States*, 185 F.3d 1286, 1290 (Fed. Cir. 1999).

In reviewing the Agency's procurement decisions, the Court recognizes that the decision is entitled to a "presumption of regularity," *Citizens to Preserve Overton Park*, 401 U.S. at 415 (citations omitted), and that the Court should not substitute its judgment for that of the agency. *Redland Genstar, Inc. v. United States*, 39 Fed. Cl. 220 (1997); *Cincom Systems, Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997); *see also M.W. Kellogg Co. v. United States*, 10 Cl. Ct. 17, 23 (1986) (holding that "deference must be afforded to an agency's . . . procurement decisions if they have a rational basis and do not

violate applicable law or regulations."). The disappointed bidder "bears a heavy burden," and the contracting officer is "entitled to exercise discretion upon a broad range of issues." *Impressa*, 238 F.3d at 1332 (citations and quotes omitted). "An agency's decision will be upheld so long as it was not 'clearly erroneous,' and there was a rational basis for the decision." *Int'l Res. Recovery, Inc. v. United States*, 64 Fed. Cl. 150, 161 (2005) (quoting *Gulf Group Inc. v. United States*, 61 Fed. Cl. 338, 353 (2004)). Furthermore, the Court must give the procuring agency considerable deference in matters requiring technical judgment. *Benchmade Knife Co., Inc. v. United States*, 79 Fed. Cl. 731, 740 (2007) ("Agencies are entitled to considerable discretion and deference in matters requiring exercise of technical judgment.").

The Federal Circuit has held that challenges to the terms of a solicitation itself, as opposed to the evaluation of proposals responding to a solicitation, must occur prior to the deadline for receipt of proposals when these are based on alleged patent errors. *Blue & Gold Fleet, L.P. v. United States,* 492 F.3d 1308, 1313 (Fed. Cir. 2007). A party's failure to do so is a waiver of its ability to raise the same objection in a bid protest action in this Court. *Id.* at 1313. "This doctrine was established to prevent contractors from taking advantage of the government, protect other bidders by assuring that all bidders bid on the same specifications, and materially aid the administration of government contracts by requiring that ambiguities be raised before the contract is bid, thus avoiding costly litigation after the fact." *Id*. at 1313-14 (citing *Cmty. Heating & Plumbing Co. v. Kelso*, 987 F.2d 1575, 1580 (Fed. Cir. 1993)).

### III. Discussion

#### A. Has Dynetics Waived its Right to Protest?

*Blue & Gold Fleet*, teaches "that a party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in" this Court. 492 F.3d at 1313. Moreover, an unsuccessful bidder may not re-write the solicitation to suit its needs in a post-award protest after sleeping on its rights before bidding. *Id*. at 1314.

In its opening brief, Dynetics challenges the GSA's interpretation of the Solicitation as "flawed." Pl. Mot. at 2. Dynetics further challenges the Agency's actions as a "tortured reading of the Solicitation" and argues that the Agency "misread" the Solicitation. Pl. Mot. at 6. In advancing these arguments, defendant contends that Dynetics is arguing "that the solicitation was ambiguous on its face and that its interpretation should prevail over GSA's." Def. Mot. at 17. Thus, these arguments were required pre-award under *Blue and Gold*. *Id*. In reply, Dynetics explains that it "has explicitly challenged the Agency's re-evaluation in deciding to rescind its award." Pl. Reply at 3. It further argues that as "[t]he Agency properly evaluated Dynetics' proposal in the first instance[,]" the defendant cannot now assert that the "challenge to the second evaluation rests on a patent ambiguity." *Id*.

The Court concludes that Dynetics is challenging the conduct of the Agency during the re-evaluation, not the terms of the solicitation. The Court, therefore, disagrees with the government's characterization of Dynetics' challenge, and the challenge is timely as a post-award protest.

### B. Does Dynetics Have Standing?

Standing is a "threshold" jurisdictional requirement. *Myers Investigative & Sec. Servs., Inc., v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002). A plaintiff contesting the award of a federal contract must establish that it is an interested party. *Id*. In the context of a bid protest under 28 U.S.C. § 1491(b)(1), the plaintiff must prove: (1) that it is an actual or prospective offeror and (2) that it possesses "a direct economic interest." *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006). To establish a "direct economic interest, a [plaintiff] must show that it had a 'substantial chance' of winning the contract." *Digitalis Educ. Sols., Inc. v. United States,* 664 F.3d 1380, 1384 (Fed. Cir. 2012).

Defendant asserts that Dynetics lacks standing to pursue its protest arguing that it is not an "interested party." Def. Mot. at 20. Defendant supports this argument by stating: "this Court's decisions in the other directly related protests might keep Dynetics from being 'next in line.'" Def. Mot at 20.

Here, Dynetics is an interested party as (1) it is an actual or prospective offeror and (2) it has a direct economic interest. Dynetics was awarded the contract under the first evaluation. But for the re-evaluation, Dynetics would have remained an awardee. Furthermore, as the Court has denied the other three protests, if the Court were to uphold Dynetics's challenge, it would be eligible for award as its proposal was previously found to be within the top 61 of awardees. Dynetics, therefore, has standing to pursue its protest.

### C. Group Relevant Experience - Demonstrating Experience with Multiple Federal Government Customers Under RFP Section L.5.2.2.3 PSC: GSA's Bonus Point Deduction was Reasonable.

Dynetics argues that the re-evaluation reducing its overall score by 500 points was unreasonable. It argues that it could not obtain the required FPDS Report for one of its PSC projects, but that the Funding ID requirement could have been located by GSA because GSA maintains a list of Funding Agency IDs, and that GSA should have "accepted" Dynetics assertion of the Funding ID as it listed it on the J.P-2 form. Pl. Mot. at 6. By requiring the FPDS Report, Dynetics argues that the Agency is raising form over substance. *Id*. Thus, Dynetics argues that the Agency's re-evaluation disallowing the 500 points was arbitrary and capricious. Pl. Mot. at 4-5

Dynetics relies on section L.5.2.2.1.1 of the RFP which provided that an offeror had two choices for project verification – a choice of either (1) filing an FPDS Report (L.5.2.2.1.1(1)), or if not available or accurate, by (2) submitting a contracting officer's signature (L.5.2.2.1.1(2)). Dynetics argues that by choosing the alternate method –

L.5.2.2.1.1(2) – in lieu of an FPDS Report – L.5.2.2.1.1 – it should have been credited with the additional points. Not only did Dynetics include the contracting officer's signature on the J.P-2 form, but Dynetics indicated the Funding Agency ID. This, claims Dynetics, should have satisfied RFP section L.5.2.2.3 to gain the additional bonus points.

However, RFP section L.5.2.2.3 provided in relevant part:

> This additional scoring is only available for relevant experience projects performed as a prime contractor to the Federal Government.
>
> Federal Government Customer is determined by the Funding Agency ID identified within the FPDS Report . . . .
>
> Verification must also be provided by **attaching the FPDS Report** that indicates the claimed Funding Agency ID.

AR at 1548 (emphasis added).

Here, unlike the base project points, which provided two options to capture points without an FPDS Report, AR at 1544-47, the RFP explicitly required an FPDS Report to capture the additional points. *See* AR at 1548-49 ("Verification must also be provided by attaching the FPDS report . . .").

Moreover, this RFP provision was subject to a pre-award protest at GAO, with the GAO finding that:

> [T]he record supports the agency's position that assigning points to firms that can provide a FPDS report is reasonably related to the agency's needs . . .
>
> Given that the acquisitions that will take place under the Alliant 2 GWAC are acquisitions that will be competed, awarded, and performed under the FAR, we find nothing objectionable with an RFP provision that provides an evaluation preference to contracts that were performed under the FAR.

AR at 2576, 2580-81.

Therefore, it is clear that the requirement for an FPDS Report was made explicit on the face of the RFP. It is further clear that when asked, the Agency was specific that an FPDS Report was required to gain the additional points. And lastly, the GAO pre-award protest determined that assigning points to firms that could provide an FPDS Report was reasonably related to the Agency's needs. Thus, when the Agency re-evaluated Dynetics' PSC projects for the possibility of capturing additional points, the Agency did exactly what it told the offerors it would do: that in the absence of an FPDS Report, the Agency would decline to award the multiple bonus points. Here, the one

project that was deducted did not have an FPDS Report, as required. The Agency was not required to waive the requirement nor did the Agency unreasonably elevate form over substance. Therefore, the Agency's re-evaluation deducting 500 points was reasonable and in accordance with the Solicitation.

### IV. Denial of Permanent Injunctive Relief

In order to establish that it is entitled to permanent injunctive relief, the plaintiff must establish actual success on the merits. The foregoing analysis reveals that there is no basis upon which to grant Dynetics' motion for judgment on the administrative record. As such, Dynetics has failed to establish an entitlement to injunctive relief, *i.e.,* it has failed to show actual success on the merits.

### V. Conclusion

For the reasons set forth above, the Court **DENIES** Dynetics' motion for judgment on the administrative record and **GRANTS** defendant's cross motion for judgment on the administrative record. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED**.

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge